**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                    )
**LOCKEBRIDGE, LLC and,**                           )
**LOCKEBRIDGE PARTNERS, INC.,**                     )
                                                    )
    **Plaintiffs,**                )
                                                    )
    **v.**                          )    **Civil Action No. 11-12252-DJC**
                                                    )
**RGMS MEDIA, INC., VOLT MEDIA, LLC**               )
**d/b/a Bee Yoo, IVAN COHEN, ERIC JACOBS,**         )
**ESQ. PETER LUSK, MARTIN**                         )
**BARWIKOWSKI, and ADAM NAGLER,**                   )
                                                    )
    **Defendants.**                  )
_____)


<u>**MEMORANDUM AND ORDER**</u>

**Casper, J.**                                                    **June 22, 2012**

## I.    Introduction

    Plaintiffs LockeBridge, LLC ("LockeBridge") and LockeBridge Partners, Inc. ("LP") (collectively, "Plaintiffs") brought this action against Defendants RGMS Media, Inc. ("RGMS"), Volt Media, LLC ("Volt"), its founder and manager, Ivan Cohen ("Cohen"), its in-house counsel, Eric Jacobs ("Jacobs") and investment bankers, Peter Lusk ("Lusk"), Martin Barwikowski ("Barwikowski") and Adam Nagler ("Nagler") asserting common law and statutory claims in connection with financial consulting services Plaintiffs agreed to provide to Volt.   The claims against Volt have been stayed pending arbitration. RGMS, Cohen and Jacobs ("the moving Defendants") have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction, or alternatively, for failure to state a claim upon

which relief can be granted pursuant to Rule 12(b)(6).  Cohen and RGMS have further moved to strike the state court order granting Plaintiffs a preliminary injunction attaching RGMS' assets and RGMS has moved to dissolve that preliminary injunction.  Plaintiffs have filed a motion for contempt and sanctions against RGMS, Cohen and Volt.  For the reasons set forth below, the moving Defendants' motions to dismiss for lack of personal jurisdiction are GRANTED, the motion to strike the preliminary injunction and RGMS' motion to dissolve that preliminary injunction are GRANTED, and Plaintiffs' motion for contempt and sanctions is DENIED.

## II.      Burden of Proof and Standard of Review

On a motion to dismiss for lack of personal jurisdiction, Plaintiffs bear the burden of establishing that personal jurisdiction over the moving Defendants exists.  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  To meet their burden, Plaintiffs must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (internal quotations and citation omitted).  Under this standard, the Court will look to the facts alleged in the pleadings and the parties' supplemental filings, including affidavits.  Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  The court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."  Mass. Sch. of Law, 142 F.3d at 34.  It will then "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted."  Id.

## III.     Factual Background

### A.      Factual Allegations

2

LockeBridge, an investment banking advisory firm and LP, its affiliate company, are based in Massachusetts. Compl. at ¶¶ 2-3. Both companies assist corporate clients in preparing for and securing financing. Id. at ¶ 15. Volt is a Florida company with its principal place of business and office in Florida. Id. at ¶ 4. Cohen, Volt's founder and manager, and Jacobs, its in-house counsel, are residents of Florida. Id. at ¶¶ 5, 7.

To secure early stage financing for Volt, Cohen met with Plaintiffs and requested both consulting and financing services. Id. at ¶ 16. Volt then signed a twelve-month "Contract for Consulting Services" with LockeBridge ("the Consulting Agreement"). Id. at ¶ 17. Under the Consulting Agreement, LockeBridge agreed to provide various consulting services designed to prepare Volt for early stage financing. Id. In exchange, Volt and Cohen agreed to compensate LockeBridge with twelve monthly installments of $10,000 totaling $120,000. Id. at ¶ 18, Ex. A (Consulting Agreement § 2). The Consulting Agreement could be terminated for cause – defined in the Consulting Agreement as any breach of the agreement, willful misconduct or gross negligence of any of the parties to the agreement, or any violation by any of the parties of applicable law. Id. at ¶ 19, Ex. A at § 9. It could also be terminated without cause, in which case "all monies due will be payable as set forth herein." Id. On April 27, 2011, Volt paid LockeBridge $10,000.00, the first monthly installment. Compl. at ¶ 20.

On April 26, 2011, the same day Volt entered into the Consulting Agreement with LockeBridge, Volt signed an Agency and Brokerage Fee Agreement with LP ("the Agency Agreement"). Id. at ¶ 21. The Agency Agreement provided, among other things, that LP was Volt's "sole and exclusive agent with regard to Sale and/or the Financing of the company," that LP was to provide certain professional services and that LP would receive an engagement fee of 1% of

the common stock of Volt and a brokerage fee.  Id., Ex. B (The Agency Agreement).  Under the Agency Agreement, Volt agreed, among other things, to respond to LP's information requests within fourteen days from receipt of the request and that under certain circumstances, if Volt failed to provide requested information, LP may terminate the agreement and Volt "shall be obligated to pay [LP] a fee equal to the higher of $300,000 or 95% of [LP's] Brokerage Fee . . . as liquidated damages."  Id. at ¶ 22, Ex. B (Agency Agreement, §§ 2.3-2.4).  Although the Agency Agreement had an initial term of twelve months (which automatically renewed thereafter for six-month periods unless terminated), it could be terminated before the twelve-month period expired on thirty days' notice for cause - defined in the Agency Agreement as any breach of the agreement, willful misconduct or gross negligence of any of the parties to the agreement, or any violation by any of the parties of applicable law.  Id. at ¶ 24, Ex. B at § 1.  With respect to any termination, the Agency Agreement provided that LP's compensation "shall survive termination of this Agreement."  Id. at ¶ 25, Ex. B at § 1.

After signing both Agreements, Volt, Cohen and others met with LockeBridge to identify material financial and technological information LockeBridge would need to enable it to prepare a private placement memorandum ("PPM").  Id. at ¶ 26.  Although Lockebridge identified such information, Cohen and Volt failed to produce the information requested.  Id. at ¶ 27. LockeBridge claims it made repeated requests for additional financial information.  Id. at ¶ 28.  Plaintiffs allege that in breach of the Agency Agreement, Volt and Cohen failed to produce this information, failed to respond to requests or provide an explanation in writing as to why Volt was unable to comply with the request and failed to provide any information within fourteen days of the request.  Id. Based on the limited information provided, LP completed a PPM.  Id. at ¶ 30.   The PPM

represented, among other things, that "LockeBridge represents [Volt] on an exclusive basis" that the PPM is "property of LockeBridge," and that the PPM could not be reproduced or revealed in whole or in part or used in any manner without prior written permission of LockBridge. Id. at ¶ 31. To secure financing for Volt, LockeBridge provided the PPM to, among others, investment bankers Lusk, Barwikowski and Nagler ("the investment bankers"). Id. at ¶ 32. The complaint alleges that the investment bankers, Volt and Cohen disclosed the PPM to potential third party investors. Id. at ¶ 33.

At some point, unbeknownst to LP, the investment bankers identified several potential investors who agreed to provide $750,000 in financing. Id. at ¶ 34. The complaint alleges that rather than informing Plaintiffs of such financing as required under the Agency Agreement, Volt with Jacobs' assistance, and consent of the investment bankers, formed RGMS with the intent of depriving Plaintiffs of the fees due and owing to them in connection with the financing. Id. at ¶ 35. The complaint further alleges that with Jacob's assistance and consent of the investment bankers, Volt transferred all or substantially all of its assets to RGMS for little or no compensation. Id. at ¶ 36.

On August 19, 2011, LockeBridge requested completion of relevant legal documents and other items necessary for successfully raising capital. Id. at ¶ 37, Ex. C (8/19/11 letter). Four days later, on August 23, 2011, Volt terminated the Consulting Agreement and the Agency Agreement without cause. Id. at ¶ 38, Ex. D (8/23/11 letter). Neither Jacobs nor Volt disclosed to LockeBridge and LP the financing to which potential investors had agreed. Id. at ¶ 39. Volt has made no other payments to LockeBridge under the Consulting Agreement other than its initial April 27, 2011 payment of $10,000.00. Id. at ¶ 40. Plaintiffs allege that despite Volt's receipt of $750,000.00 in

financing, which Plaintiffs claim was obtained based on LP's PPM, Volt has failed to pay LP a brokerage fee as required under the Agency Agreement. Id. at ¶ 41. The complaint further alleges that Volt has failed to provide LP with its engagement fee of one percent equity in Volt, as required by the Agency Agreement. Id.

**B.  Proffer of Jurisdictional Evidence**

**1.  Cohen's Affidavit**

In an affidavit, Cohen asserts that he is a resident of Florida and has never resided in Massachusetts. D. 21-1 at ¶¶ 2, 3. He further asserts that he has never done business in Massachusetts, maintains no office in Massachusetts, has no bank account, mailbox, or telephone listing in Massachusetts, and has never owned any property in Massachusetts. Id. at ¶¶ 4-6, 8. According to the affidavit, Cohen met with Plaintiffs in Florida, not Massachusetts, and had no involvement with the negotiation of the Agency or Consulting Agreement, which were negotiated by Michael Briansky. Id. at ¶¶ 10-12. Cohen asserts that he received a copy of the Agreements from Briansky who handled all preliminary negotiations and discussions. Id. at ¶¶ 12-13.

**2.  Affidavit of Scott Waxler**

In opposition to the motions to dismiss, Plaintiffs submitted the affidavit of Scott Waxler ("Waxler Aff."), principal of Lockebridge and LP, located in Massachusetts. D. 38 at ¶¶ 2, 3. Waxler attests that in April 2011, he was personally involved in the negotiation and execution of the Agreements between LockeBridge and Volt and communicated with Jacobs and Cohen via email and telephone. Id. at ¶¶ 4, 5. Waxler asserts that prior to execution of the Agreements in April 2011, he had discussions with Cohen regarding Volt's prospective retention of LockeBridge to provide investment advisory services to Volt and thereafter, Waxler maintained regular contact with

Cohen and/or employees or agents working on his behalf regarding the negotiation of the Agreements between Volt and LockeBridge. Id. at ¶ 6. Waxler further asserts that during this time, he maintained contact via email and telephone with Jacobs and other agents of Volt concerning information required from Volt, Volt's operational procedures and marketing strategies, as well as LockeBridge's performance of its contractual obligations. Id. at ¶ 8. Waxler attests that one point of discussion with Volt's agents was the choice of law provision in each of the Agreements. Id. Waxler further states that he met with Cohen and Jacobs in Florida and that "it was understood by Volt, Cohen and Jacobs" that all work to be performed by LockeBridge under the Agreements would be performed in Massachusetts. Id. at ¶¶ 10, 11. Waxler asserts that after the Agreements were executed, LockeBridge made continuous attempts to obtain certain information from Volt necessary for LockBridge to fully perform its duties under the Agreements, but that Volt failed to provide the information LockeBridge requested and never provided an explanation as to why the necessary information was not forthcoming. Id. at ¶ 12. Waxler attests that in August 2011, Volt notified him, through Jacobs, that it was terminating its Agreements with LockeBridge. Id. at ¶ 13.

## IV.     Procedural History

Plaintiffs initiated this lawsuit on December 7, 2011 in Middlesex Superior Court against all Defendants, asserting numerous claims against them. The complaint also sought an injunction against Volt, Cohen and RGMS to prohibit Volt and RGMS from transferring, selling, assigning or destroying assets sufficient to satisfy a judgment in this action (Count XI) and sought to attach Volt and RGMS' assets held by Wachovia Bank and Wells Fargo Bank by trustee process (Count XII).

On December 19, 2011, Defendants removed this action to this Court, asserting subject matter jurisdiction under 28 U.S.C. § 1332. (D. 1). Volt subsequently moved to compel arbitration

pursuant to the arbitration clauses contained in the Consulting Agreement and Agency Agreement and stay the case as to Volt and to strike the state court order granting Plaintiffs a preliminary injunction. D. 17. Jacobs, RGMS and Cohen have independently moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), or in the alternative, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). D. 15, 19, 21, respectively. In addition to moving for dismissal under Rules 12(b)(2) and 12(b)(6), Volt, RGMS and Cohen have moved to strike the state court order, D. 17, 19, 21, respectively, and RGMS has moved to dissolve the preliminary injunction in its entirety. D. 27. Plaintiffs have filed a motion for contempt and for sanctions against RGMS, Volt and Cohen based upon the state court's order requiring these Defendants to produce the last known addresses of the investment banker Defendants by December 19, 2011. D. 26. The Court heard oral argument on all motions on April 19, 2012 and granted Volt's motion to compel arbitration. The Court took the remaining motions under advisement.

## V.     Discussion

### A.     Motions to Dismiss For Lack of Personal Jurisdiction

#### 1.     Overview of Personal Jurisdiction

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quoting Sawtelle, 70 F.3d at 1387 (internal quotation marks and citation omitted)). Accordingly, this Court may only exercise personal jurisdiction within the limits set by the Massachusetts long-arm statute and the Constitution. Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). Because courts construe "the Massachusetts long-arm statute

as being coextensive with the limits permitted by the Constitution," this Court may "turn directly to the constitutional test for determining specific jurisdiction." <u>Adelson v. Hananel</u>, 652 F.3d 75, 80 (1st Cir. 2011).

Although a court may exercise two types of personal jurisdiction: general and specific, <u>Cossaboon v. Me. Med. Ctr.</u>, 600 F.3d 25, 31 (1st Cir. 2010), Plaintiffs do not contend that the Court has general jurisdiction over the moving Defendants. 4/19/2012 Hearing Tr. 32. Therefore, the Court need only address whether Plaintiffs have asserted sufficient facts to support the exercise of specific jurisdiction over the moving Defendants.

### 2.    Specific Jurisdiction Analysis

"The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate: 1) whether the claims arise out of or are related to the defendant's in-state activities, 2) whether the defendant has purposefully availed itself of the laws of the forum state and 3) whether the exercise of jurisdiction is reasonable under the circumstances." <u>Pesmel N. Am., LLC v. Caraustar Indus., Inc.</u>, 754 F. Supp. 2d 168, 172 (D. Mass. 2010).

The first prong, relatedness, focuses on whether "'the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities.'" <u>Astro–Med, Inc. v. Nihon Kohden Am., Inc.</u>, 591 F.3d 1, 9 (1st Cir. 2009) (quoting <u>N. Laminate Sales, Inc. v. Davis</u>, 403 F.3d 14, 25 (1st Cir. 2005)) (further citation omitted). It is a "flexible, relaxed standard." <u>Id.</u> (internal quotations and citations omitted).

To satisfy the second prong of purposeful availment, there must be some act or series of acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357

U.S. 235, 253 (1958).  The purposeful availment test "focuses on the defendant's intentionality," and "is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts."  <u>Swiss Am. Bank</u>, 274 F.3d at 623-24.

If the first two parts of the test for specific jurisdiction are satisfied, the Court must still determine whether the exercise of personal jurisdiction is reasonable in light of the so called "Gestalt factors," including: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  <u>Cossaboon</u>, 600 F.3d at 33 n. 3.  Thus, even when the lawsuit arises out of the defendant's purposefully generated contacts with the forum, the Court may decline to exercise personal jurisdiction if doing so would be unreasonable and fundamentally unfair.  <u>See</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476-78 (1985); <u>Ticketmaster-New York, Inc.</u>, 26 F.3d at 209-10.

### a.    No Personal Jurisdiction Over Jacobs or Cohen

Plaintiffs' allegations and evidentiary proffer in support of jurisdiction, taken as true and construed in the light most favorable to their jurisdictional claim, <u>Foster-Miller, Inc. v. Babcock & Wilcox Canada</u>, 46 F.3d 138, 145 (1st Cir. 1995); <u>Mass. Sch. of Law at Andover</u>, 142 F.3d at 34, are insufficient to establish that this Court has specific personal jurisdiction over Jacobs or Cohen.

### 1.    Relatedness

As to relatedness, Plaintiffs have failed to demonstrate that the limited contacts between Jacobs or Cohen and Massachusetts give rise to the claims asserted against them in the complaint.

Jacobs is a Florida resident, practices law in Florida and maintains no office in Massachusetts. D.

16 at 6. Jacobs, as Volt's in-house counsel, met with Waxler in Florida on one occasion and from

April to August 2011 (the duration of the relationship between LockeBridge and Volt), Jacobs

communicated via email and telephone with Waxler. D. 38 at ¶¶ 5, 7, 10. Waxler attests that he had

communicated with Jacobs and other Volt agents concerning the information required from Volt,

Volt's operation procedures and marketing strategies, LockeBridge's performance of its contractual

obligations and discussed with Volt agents the choice of law provisions in the Agreements. Id. at

¶ 8. Waxler's affidavit does not specify when and in most instances, where, these communications

occurred. See id. Other than communicating via telephone and email concerning such matters, the

only other contact Jacobs had with Massachusetts was sending the August 2011 termination letter

to Waxler in Massachusetts. Id. at ¶ 13. Plaintiffs allege no other contacts between Jacobs and

Massachusetts.

Of the limited contacts between Massachusetts and Jacobs, none appear to give rise to the

three claims asserted against Jacobs in the complaint  - namely, Count VII, violation of Mass. Gen.

L. c. 93A; Count IX, fraudulent conveyance; and Count X, conspiracy. The complaint alleges that

Cohen, Volt and Jacobs engaged in unfair and deceptive practices in violation of Mass. Gen. L. c.

93A when they made "misrepresentations of fact regarding, among other things, Plaintiffs' exclusive

right to raise capital; willfully and intentionally terminat[ed] the Agreements without cause to void

their obligations to the Plaintiffs . . . and fraudulently transferred all or substantially all of Volt's

assets to RGMS for little or no compensation with the specific intent of depriving the Plaintiffs of

the fees due and owing to them." Compl. at ¶ 73. The complaint, however, fails to allege when

Jacobs made such misrepresentations and whether he made them in his email or telephone calls with

Waxler or if he made them during their meeting in Florida. Plaintiffs' counsel's representation at oral argument that Plaintiffs "are not alleging . . . that Jacobs committed fraud by making representations to LockeBridge" and that "[t]hat's why there's no representations set forth in the complaint," 4/19/2012 Hearing Tr. 36, also appears to be inconsistent with the allegation in the complaint in Count VII for violation of Mass. Gen. L. c. 93A that Jacobs with Cohen and Volt made these misrepresentations. Even if Jacobs had made the alleged misrepresentations while he was located in Florida and Waxler was in Massachusetts, the complaint fails to allege contacts with Massachusetts that can be said to give rise to the three claims alleged against Jacobs.

As to the termination of the Agreements, although Jacobs sent a letter to Waxler notifying him of the termination, it appears from the complaint that the letter was sent after Jacobs committed the alleged tortious acts and is thus not relevant to the Court's relatedness inquiry. See Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005). Even assuming the alleged fraudulent conveyance of Volt's assets to RGMS occurred after Jacobs sent this letter, the parties do not dispute that the alleged termination of the Agreements occurred in Florida, not Massachusetts, and as counsel pressed at oral argument, 4/19/2012 Hearing Tr. 35-36, the heart of their claim is the breach of the Agreements and fraudulent conveyance of Volt's assets to RGMS which is not alleged to have occurred in Massachusetts. Plaintiffs have failed to show that the alleged fraudulent transfer of Volt's assets to RGMS (Count IX and part of Mass. Gen. L. c. 93A claim) as well as the alleged conspiracy among Jacobs, Cohen and Volt (Count X) involved any contact with Massachusetts. Plaintiffs' claims must directly arise out of Jacobs' contacts with Massachusetts; "[t]he relatedness requirement is not met merely because [Plaintiffs'] cause of action arose out of the general relationship between the parties[.]" Sawtelle, 70 F.3d at 1389. Although Jacobs may have

communicated via email and telephone with Waxler on an array of matters, which are certainly "contacts," id. at 1389-90, it cannot be said that these contacts, taken together, constituted the conduct that caused Plaintiffs' injuries and were in-forum acts sufficient to satisfy the relatedness element of the jurisdictional inquiry.

Similarly, Plaintiffs have failed to demonstrate that Cohen's few contacts with Massachusetts give rise to the claims asserted against him in the complaint (Count VI, negligent or intentional misrepresentation; Count VII, violation of Mass. Gen. L. c. 93A; Count IX, fraudulent conveyance; Count X, conspiracy; and Count XI, injunction). Cohen is a Florida resident, maintains no office, bank account, mailbox or telephone listing in Massachusetts. D. 21-1 at ¶¶ 2, 5, 6. He has never owned property or advertised in Massachusetts. Id. at ¶¶ 8, 9. Any in-person meetings between Waxler, Cohen and Jacobs occurred in Florida, not Massachusetts. D. 38 at ¶ 10. In fact, Waxler's statement in his affidavit that during the course of his involvement in the negotiation and execution of the Agreements between Plaintiffs and Volt, he communicated directly with Cohen and Jacobs via telephone and e-mail appears to contradict the e-mail (attached to Waxler's affidavit) that Waxler sent Jacobs on June 23, 2011, expressing concern that LockeBridge was "significantly handicapped due to [the] fact that we do not communicate with Ivan [Cohen]. We did not negotiate our Engagement with Ivan and we continue to have little if any strategic level conve[r]sations with Ivan" and stating that his "personal conversations have been primarily with Briansky" and that Waxler was "told from the beginning that Briansky would be our interface so that we could leave Ivan to focus on development." D. 38-1. Thus, as of late June 2011, the evidence proffered by Plaintiffs appears to show that they had communicated almost exclusively with Briansky, not Jacobs or Cohen regarding the negotiation of the Agreements and contractual relationship between Volt and

Plaintiffs.

As discussed above, with respect to the Mass. Gen. L. c. 93A claim, the complaint does not allege nor do Plaintiffs proffer evidence that the termination of the Agreements occurred in Massachusetts. Plaintiffs further fail to show that the fraudulent transfer of Volt's assets to RGMS (Count IX and part of Mass. Gen. L. c. 93A claim) as well as the alleged conspiracy among Jacobs, Cohen and Volt (Count X) involved any contact with Massachusetts. Like Jacobs, Cohen communicated via email and telephone with Waxler on various matters, but it does not necessarily follow that the general relationship between the parties gives rise to the claims against Cohen here. With respect to the misrepresentation claim (Count VI), that Cohen allegedly made misrepresentations of material fact that Plaintiffs would be the "sole and exclusive agent for sale or financing" of the company and that they would provide LP any details or inquiries for financing, the complaint does not allege nor does the record show that Cohen made these statements in e-mail and telephone communications with Waxler or whether these discussions occurred when Waxler, Cohen and Jacobs all met in Florida. A Massachusetts court does not automatically have personal jurisdiction over Cohen because he is a manager of Volt. Plaintiffs argue that their claims arise from Volt's business relationship with them which entailed contact with Jacobs and Cohen. D. 35 at 13. However, the relatedness requirement is not satisfied by a cause of action that arises out of a general relationship between the parties; rather, a defendant's in-forum conduct must cause the plaintiff's injury or give rise to the claims alleged against him. Sawtelle, 70 F.3d at 1389. Such is not the case here.

### 2.    Purposeful Availment

Although Plaintiffs have failed to satisfy relatedness, required to establish personal

jurisdiction, the Court addresses purposeful availment for the sake of completeness. Plaintiffs have failed to demonstrate that Jacobs intentionally and voluntarily directed activities towards Massachusetts merely because Jacobs, in his role as in-house counsel for Volt, engaged in telephone and email communications with Waxler. The complaint alleges no facts that the substance of those particular communications have a causal nexus to the alleged tortious conduct. In addition, contrary to Plaintiffs' assertion otherwise, 4/19/2012 Tr. at 40-41, the letter sent by Jacobs, in his role as in-house counsel, to Plaintiffs is insufficient for Jacobs, in his personal capacity, to contemplate being haled into court in Massachusetts. Jacobs' e-mail and telephone communications with Waxler, and the termination letter sent to Plaintiffs are thus insufficient to establish that Jacobs voluntarily and intentionally directed contacts into Massachusetts. See Sher v. Johnson, 911 F.2d 1357, 1362-63 (9th Cir. 1990) (contacts between a client and a non-resident law firm consisting of telephone calls, mailings, and three visits by the lawyer to the forum state to visit a client were not, by themselves, sufficient contacts with the forum). "The enforcement of personal jurisdiction over a non-resident defendant is foreseeable when that defendant has established a continuing obligation between itself and the forum state." Sawtelle, 70 F.3d at 1393. Jacobs was not in a position to anticipate being haled into court alongside Volt where Plaintiffs have failed to allege that Jacobs' contacts with Massachusetts form the basis of their legal claims or that Jacobs sought the benefits or protections afforded by Massachusetts law through these communications.

The same can be said with respect to Cohen. Plaintiffs argue that because Cohen signed the Agreements on behalf of Volt, in addition to his alleged communications with Waxler, Cohen should have reasonably expected to be subject to the jurisdiction of Massachusetts since Plaintiffs are located here and expected to perform their work for Volt here. "A contract, by itself, cannot

15

automatically establish minimum contacts." <u>Swiss Am. Bank</u>, 274 F.3d at 621; <u>Ganis Corp. of Cal. v. Jackson</u>, 822 F.2d 194, 197 (1st Cir. 1987). A contract is "but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." <u>Burger King</u>, 471 U.S. at 479 (internal quotations omitted). Under this analysis, the Court focuses on "all of the communications and transactions between the parties, before, during and after the consummation of the contract, to determine the degree and type of contacts the defendant has with the forum, apart from the contract alone." <u>Ganis Corp.</u>, 822 F.2d at 197-98. Thus, the mere fact that Volt executed two Agreements with Plaintiffs and that Cohen signed those Agreements on Volt's behalf (although Cohen himself was not a party to the Agreements), cannot amount to a contact between Massachusetts and Volt for jurisdictional purposes, it also does not constitute a contact between Massachusetts and Cohen. The Court must instead consider the parties' communications in connection with the Agreements between Volt and Plaintiffs.

That Cohen communicated with Waxler via email and telephone about the relationship between Volt and Plaintiffs is not alleged to be the source of Plaintiffs' injuries. Plaintiffs do not argue that Cohen directed any conduct at Massachusetts to receive a benefit for himself by doing so. That Cohen is a manager at Volt does not automatically subject him to the Court's personal jurisdiction. "The general rule is that jurisdiction over individual officers of a corporation may not be based merely on jurisdiction over the corporation." <u>Escude Cruz v. Ortho Pharmaceutical Corp.</u>, 619 F.2d 902, 906 (1st Cir.1980) (holding that jurisdiction over a corporate officer may not be based merely on jurisdiction over the corporation itself, but instead must be based on a "showing of direct personal involvement by the corporate officer in some decision or action which is causally related

to plaintiff's injury").   It appears that Waxler primarily communicated with Brianksy, not Cohen, as evidenced by the e-mail Waxler sent to Jacobs on June 23, 2011.  D. 38-1.  Even if Cohen discussed matters concerning the contractual relationship between Plaintiffs and Volt, Plaintiffs fail to either allege facts in the complaint or proffer evidence that the communications between Waxler and Cohen give rise to the wrongful conduct alleged in the complaint against Cohen.   None of the e-mails evidencing the communications between Cohen and Waxler attached to Waxler's affidavit contain any substance relevant to Plaintiffs' allegations against Cohen; rather, the e-mails merely show that Waxler and Cohen maintained some contact with each other via e-mail and telephone. The e-mails themselves, without substance providing some causal nexus to the claims alleged against Cohen, do not support a finding that Cohen directed conduct towards Massachusetts to receive the benefit and protection of Massachusetts law.   Accordingly, Plaintiffs have failed to establish that either Jacobs or Cohen purposefully availed themselves of Massachusetts.

### 3.      Reasonableness

On balance, the Gestalt factors also weigh against the exercise of personal jurisdiction over Jacobs and Cohen.  With respect to the Gestalt factor, the defendant's burden of appearing, the Court finds that the burden on Jacobs and Cohen would not be significant.  The need to defend an action in a foreign jurisdiction "is almost always inconvenient and/or costly . . . this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995).  Because neither Jacobs nor Cohen has shown that the burden of appearing from Florida is overly onerous this factor does not weigh against exercising jurisdiction.

The second factor, concerning the forum state's interest in adjudicating the dispute, weighs

against keeping the lawsuit against Jacobs and Cohen in Massachusetts. Jacobs and Cohen are located in Florida, not Massachusetts and have no connection to Massachusetts. Moreover, the alleged wrongful conduct by Jacobs and Cohen, according to the complaint, appears to have occurred entirely outside of Massachusetts which cuts against jurisdiction. See Sawtelle, 70 F.3d at 1395 (stating that the second Gestalt factor "cuts against jurisdiction" when "the acts comprising the defendants' alleged [tortious acts] occurred almost entirely outside of [the forum]").

Although under the third Gestalt factor, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience," Sawtelle, 70 F.3d at 1395, this factor does not weigh in favor of maintaining the litigation in Massachusetts for the aforementioned reasons. The fourth Gestalt factor, the judicial system's interest in obtaining the most effective resolution of the case, does not tip in favor of exercising personal jurisdiction over Jacobs or Cohen, since it cannot be said that the "most efficient path for the judicial system . . . is to move forward with the lawsuit in the present forum." Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 46 (D. Mass. 1997). Volt and Plaintiffs have agreed to arbitrate this matter and none of Jacobs' or Cohen's contacts with Massachusetts appear to give rise to Plaintiffs' claims against them; rather, the conduct complained of appears to have occurred in Florida. Even if the final factor, the common interest of all sovereigns in promoting substantive social policies, weighed in favor of exercising jurisdiction, it would not tip the balance in favor of finding that the exercise of personal jurisdiction is reasonable here. On balance, therefore, the Gestalt factors weigh against the exercise of personal jurisdiction over Jacobs and Cohen.

Accordingly, the Court grants Cohen's and Jacobs' motions to dismiss for lack of personal jurisdiction.

### b. No Personal Jurisdiction Over RGMS

Turning to RGMS, Plaintiffs neither allege nor proffer evidence of a single contact between RGMS and Massachusetts.  In fact, according to the complaint, none of the alleged tortious conduct by RGMS (Count IX, fraudulent conveyance; Count X, conspiracy; Count XI, injunction) occurred in Massachusetts.  For example, the complaint fails to allege that the fraudulent conveyance claim asserted against RGMS, Volt, Cohen and Jacobs - namely, that RGMS was formed with the intent of depriving Plaintiffs of the fees due and owing to them, Compl. at ¶ 83, that Volt transferred all of its assets to RGMS, Compl. at ¶ 84, or that the conspiracy alleged against the same Defendants for their agreement to avoid Volt's obligations under the Agreements and wrongfully deprive Plaintiffs of the fees due and owing to them, Compl. at ¶ 90 - was conduct that is remotely connected to Massachusetts, much less arose out of contacts with Massachusetts.  Plaintiffs, therefore, cannot satisfy the relatedness prong of the jurisdictional inquiry.  As to purposeful availment, Plaintiffs fail to identify any activities or conduct RGMS intentionally directed towards Massachusetts to support a finding that RGMS purposefully availed itself of the benefits and protections of Massachusetts.

To the extent Plaintiffs now argue that RGMS is the alter-ego of Volt, D. 35 at 13-15, the complaint fails to allege alter-ego liability or sufficient facts to support such theory.  In Massachusetts, corporations "ordinarily are regarded as separate and distinct entities." Scott v. NG U.S. 1, Inc., 450 Mass. 760, 766 (2008).  A court may, however, "pierce the corporate veil" between a parent and a subsidiary corporation "when the parent exercises 'some form of pervasive control' of the activities of the subsidiary' and there is some fraudulent or injurious consequence of the intercorporate relationship,'" Id. at 767 (quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968)), or "when there is a confused intermingling of activity of two or more

corporations engaged in common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." My Bread Baking, 353 Mass. at 619. In Massachusetts, courts consider a number of factors to determine whether to disregard corporate formalities including: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." Scott, 450 Mass. at 768 (citation omitted). When asked at oral argument to identify the factual allegations in the complaint to support an alter-ego theory, Plaintiffs' counsel pointed to a single allegation: that Volt transferred "substantially all of its assets to RGMS without fair consideration in exchange for the transfer at a time when Volt had already incurred debts to the Plaintiffs and when Volt believed or reasonably should have believed that it would incur additional debts to the Plaintiffs associated with the Agreements." Compl. at ¶ 84. Even if such allegation could be construed to address several factors regarding intermingling of assets or use of the corporation in promoting fraud, the complaint does not allege facts with respect to the remaining factors that would support Plaintiffs' newly raised alter-ego theory and cannot form the basis for exercising personal jurisdiction over RGMS here.

The Gestalt factors also weigh against exercising personal jurisdiction over RGMS. Considering the first Gestalt factor, the defendant's burden of appearing, the Court finds that the burden on RGMS would not be significant, as RGMS has not shown an unusual burden of appearing

from Florida. The second factor weighs against keeping the lawsuit against RGMS in Massachusetts. RGMS is a Florida entity and has no connection to Massachusetts. Moreover, the alleged wrongful conduct by RGMS, according to the complaint, appears to have occurred entirely outside of Massachusetts. The third Gestalt factor does not weigh in favor of maintaining the litigation in Massachusetts for the aforementioned reasons. The fourth Gestalt factor does not tip in favor of exercising personal jurisdiction over RGMS since according to the complaint, RGMS had no contacts with Massachusetts thus no contacts could have given rise to the Plaintiffs' claims against it; rather, the conduct complained of appears to have occurred in Florida. Consideration of the final factor also does not tip the balance in favor of finding that the exercise of personal jurisdiction is reasonable here. On balance, therefore, the Gestalt factors weigh against the exercise of personal jurisdiction over RGMS.

Accordingly, RGMS' motion to dismiss for lack of personal jurisdiction is GRANTED. In light of the Court's ruling with respect to the moving Defendants' motions to dismiss for lack of personal jurisdiction, the Court need not reach whether the complaint fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) against these Defendants.

### B. Motions to Strike or Dissolve the Preliminary Injunction

Because no personal jurisdiction exists over RGMS, Cohen or Jacobs, and the Court has granted their motions to dismiss on this basis, the preliminary injunction issued by the Middlesex Superior Court against these Defendants in this case before it was removed here is void, see, e.g., United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1084 (1st Cir. 1992) (noting that absent personal jurisdiction, preliminary injunction and contempt orders are void since the court would not have had the authority to enter the orders); Kulko v. Superior Court,

436 U.S. 84, 91 (1978) ("It has long been the rule that a valid judgment . . . may be entered only by a court having jurisdiction over the person of the defendant"), and is "lifted as a matter of course." Aliberti v. GMAC Mortg., LLC, 779 F. Supp. 2d 242, 248 (D. Mass. 2011) (noting that the preliminary injunction issued by the state court is ordinarily lifted once a motion to dismiss is allowed by the district court based on the same claims). Therefore, RGMS' and Cohen's motions to dissolve the state court issued preliminary injunction are GRANTED.

Volt has also moved for dissolution or, alternatively, modification, of the state court preliminary injunction. The parties do not dispute that personal jurisdiction exists over Volt and that the injunction, therefore, is valid on jurisdictional grounds. State court injunctions, like that against Volt here, issued prior to removal remain "in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450; see Hyde Park Partners, L.P. v. Connolly, 839 F.2d 837, 842 (1st Cir. 1988) (noting that under 28 U.S.C. § 1450, a district court has the authority to modify or dissolve state court injunction and orders following removal).

"A preliminary injunction is an 'extraordinary and drastic remedy.'" Voice of The Arab World v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (further citation omitted). In deciding whether dissolution of a preliminary injunction is appropriate, the Court applies the same four-factor analysis that guides a court in deciding whether to grant or deny a preliminary injunction in the first instance: (1) likelihood of success on the merits; (2) the threat of irreparable harm, in the absence of the injunction, to the party seeking relief; (3) the balance of hardships between the parties; and (4) the public interest. Waldron v. George Weston Bakeries Inc., 570 F.3d 5, 9 (1st Cir. 2009) (citation omitted); Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1225 (1st Cir. 1994).

Even assuming that Plaintiffs could demonstrate a likelihood of success on the merits on some of their claims as to Volt, Plaintiffs have not established they will suffer irreparable harm if the injunction does not remain in effect as to Volt. "Irreparable harm most often exists where a party has no adequate remedy at law." Charlesbank Equity Fund II, LP v. Blinds to Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). Here, Plaintiffs have an adequate remedy at law - namely, damages. Plaintiffs' action against Volt centers on its breach of contract claim and the alleged fraudulent conveyance in connection with such breach, see Compl. at ¶¶ 42-75, 82-92; the complaint seeks money damages and injunctive relief to protect the Plaintiffs' ability to collect those damages. Compl., Relief Requested. Where, as here, Plaintiffs have an adequate remedy at law if they are ultimately successful in this case - i.e., money damages - and point to no evidence to the contrary, it cannot be said that irreparable harm exists. See Braintree Laboratories, Inc., Citigroup Global Markets, Inc., 671 F. Supp. 2d 202, 208 (D. Mass. 2009) (rejecting Plaintiffs' argument of irreparable harm in being denied immediate access to funds tied up in illiquid securities and reasoning that a need for liquidity is not irreparable harm where no evidence existed that the defendant could not pay damages and provide Plaintiffs with an adequate remedy at law). Plaintiffs' argument that Volt has no assets that would be available to satisfy a judgment here, 4/19/2012 Hearing Tr. 35-36, is speculative in light of the absence of any supporting evidence in the record and cannot serve as the basis for a finding of irreparable harm. Even accepting as true the allegation that Volt has no assets or transferred substantially all of its assets to RGMS prior to the state court's issuance of the preliminary injunction, Plaintiffs' argument to keep the injunction in full force focused on the transfer of all Volt's assets to RGMS, and RGMS has now been dismissed for lack of personal jurisdiction. Lastly, although the public has an interest in requiring parties to honor their

contractual obligations to one another, Plaintiffs have the burden to establish that they face the risk of greater harm than that faced by Volt if an injunction is issued which they have failed to do here. Accordingly, Volt's motion to dissolve the state court preliminary injunction is GRANTED.

### C. Plaintiffs' Motion for Contempt and for Sanctions

The state court's preliminary injunction order prohibited "RGMS . . . Cohen . . . Volt . . . and their officers, employees and agents . . . from transferring, selling or encumbering their assets other than in the ordinary course of business" D. 1-1 (Preliminary Injunction Order attached to complaint) The order further stated: "The Court shall hold a further hearing on December 19, 2011 and the Defendants shall at that time provide the last known addresses for Peter Lusk, Martin Barwikowski and Adam Nagler." Id. Plaintiffs have moved to hold RGMS, Cohen and Volt in contempt for failing to provide such addresses since the issuance of this order. Because no personal jurisdiction exists over RGMS or Cohen, the Court has no authority to issue an order of contempt against them. Volt, therefore, is the only party against whom the Court may find in contempt.

To establish civil contempt, the Plaintiffs must prove noncompliance with the preliminary injunction order "by clear and convincing evidence." Langton v. Johnston, 928 F.2d 1206, 1220 (1st Cir. 1991). The order must also be "clear and unambiguous in its terms." Gemco Latinoamerica, Inc. v. Seiko Time Corp., 61 F.3d 94, 98 (1st Cir. 1995). Any "[a]mbiguities and uncertainties about the scope of a court order are read in favor of 'the person charged with contempt.'" Dystar Corp. v. Canto, 1 F.Supp.2d 48, 54 (D. Mass. 1997) (quoting Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991)).

Here, Plaintiffs have failed to establish noncompliance with the preliminary injunction order by clear and convincing evidence. The order stated that the Court would hold a further hearing on

December 19, 2011 and required the Defendants to produce the last known addresses for Peter Lusk, Martin Barwikowski and Adam Nagler at that time. D. 1-1. RGMS, Cohen and Volt interpreted this language as requiring them to provide such addresses at the December 19, 2011 hearing, and because the hearing was not held, the order did not require them to produce the addresses. D. 29 at 4. The Court finds such interpretation of the order to be reasonable in light of the order's language and that the condition upon which they were to provide the addresses - the hearing on December 19, 2011 - never occurred. Given the language of the order and that ambiguities or uncertainties about an order are to be read in favor of the person charged with contempt, it cannot be said that Plaintiffs have satisfied their burden of showing by clear and convincing evidence that RGMS, Cohen and Volt violated the order to warrant a finding of contempt here. Accordingly, Plaintiffs' motion for contempt and for sanctions is DENIED.

## VI.     Conclusion

For the foregoing reasons, the Defendants' motions to dismiss for lack of personal jurisdiction are GRANTED. The motions to strike the state court order and dissolve the preliminary injunction are GRANTED. Plaintiffs' motion for contempt and sanctions is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge